## BRUCE WAYNE GILBERT, Appellant, v. THE STATE OF NEVADA, Respondent.

### No. 14187

September 27, 1983                                 669 P.2d 699

*Thomas E. Perkins,* State Public Defender, *Annabelle Whiting Hall,* Deputy Public Defender, Carson City, for Appellant.

*Brian McKay,* Attorney General, *William A. Maddox,* District Attorney, *Charles P. Cockerill,* Deputy District Attorney, Carson City, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from a four year prison sentence and a $2,000 fine imposed on an indigent defendant for violating NRS 484.3795. Appellant contends that he is entitled to elect rehabilitative treatment under NRS 484.379(6) (1981) and that the State cannot constitutionally imprison him for nonpayment of the fine. For reasons hereafter specified, we conclude that appellant is not entitled to appellate relief.

On February 13, 1982, appellant ran a red light at the intersection of U.S. Highway 395 South and U.S. Highway 50 West in Carson City and collided with the car in which Evelyn Bentley was riding. Mrs. Bentley died from the injuries received during the collision. Blood drawn from the appellant shortly after the collision contained between .206 and .226 percent alcohol. Appellant was arrested and charged with (1) causing the death of another by driving a motor vehicle while under the influence of intoxicating liquor, in violation of NRS 484.3795; or in the alternative, (2) involuntary manslaughter, in violation of NRS 200.040, 200.070 and 200.090.

Appellant pleaded guilty to violating NRS 484.3795. Before the formal judgment was pronounced, appellant filed a notice of election requesting that he receive treatment as an alcoholic under NRS 484.379(6) (1981). The lower court ruled that to be consistent with NRS 458.300 and 484.3795, NRS 484.379(6) (1981) did not permit defendants convicted under NRS 484.3795 to elect alcoholic rehabilitation treatment. The lower court then raised, *sua sponte,* a question concerning the constitutionality of *imposing* a mandatory fine upon an indigent defendant.[1] Although the lower court expressed concern, it felt

[1]The lower court joined in the presentence report's characterization of appellant as an indigent. Appellant's family, although supportive, is equally destitute. Appellant is represented by the state public defender. Respondent has not challenged the fact of appellant's indigency.

compelled to impose a fine on the premise that the statute was not clearly unconstitutional on its face. Thus, appellant was sentenced to four years in the Nevada State Prison and fined $2,000.

Appellant first contends that NRS 484.379(6)(c)(2) (1981)[2] can be construed to permit those persons convicted under NRS 484.3795 to elect rehabilitative treatment. This argument, however, was predicated on an earlier version of NRS 484.379(6) (1981) which erroneously included "of" between "subsection 1 or 2" and "NRS 484.379(5)." *Compare* 1981 Nev. Stats. ch. 755 § 5 *with* NRS 484.379(6)(c)(2) (1981). In its present corrected form, NRS 484.379(6) (1981) clearly defines the class of defendants who may elect rehabilitative treatment as those persons who have been convicted of a violation of subsection 1 or 2 of NRS 484.379. Appellant's conviction was for a violation of NRS 484.3795. Thus, appellant was not entitled to elect treatment under NRS 484.379(6) (1981).

The lower court's concerns regarding the imposition of mandatory fines on indigent defendants are inextricably bound with the issue of imprisoning indigents for nonpayment of fines.[3] To

[2]NRS 484.379(6) (1981) provides that:

A person who has been convicted of a violation of subsection 1 or 2 may elect to undergo treatment approved by the court for at least 1 year if:

(a) He is classified as an alcoholic or abuser of drugs by a:

(1) Counselor certified to make that classification by the bureau of alcohol and drug abuse of the rehabilitation division of the department of human resources; or

(2) Physician certified to make that classification by the state board of medical examiners;

(b) He agrees to pay the costs of the treatment;

(c) He has served a term of imprisonment in the county jail of:

(1) Five days if it is his second conviction; or

(2) Thirty days if it is his third conviction, in any jurisdiction of violating subsection 1 or 2, NRS 484.3795, or a law which prohibits the same conduct, within 5 years; and

(d) The court orders the department to suspend his driver's license for a period specified in the order which must not be less than 90 days and not more than the time required to complete the treatment. The court may not allow him any limited driving privileges unless his inability to drive to and from work or in the course of his work would cause extreme hardship or prevent his earning a living.

A person may elect treatment pursuant to this subsection once in any period of 5 years.

[3]The issue concerning incarceration of indigents for nonpayment of fines has evoked substantial uncircumscribed analysis. *See* Note, *Discriminations Against the Poor and the Fourteenth Amendment,* 81 Harv.L.Rev. 435, 436 (1967). "Due process and equal protection principles converge in the Court's analysis in these cases." Bearden v. Georgia, 103 S.Ct. 2064, 2068 (1983).

resolve the former question, we must address the latter. Appellant's four year prison sentence and $2,000 fine were imposed on him pursuant to NRS 484.3795.[4] Under the terms of NRS 176.065,[5] whenever both a fine and imprisonment are imposed the defendant is to be incarcerated in prison or jail for an additional day for each $4 of the amount imposed until the fine is discharged.

Appellant contends that under the holding of Williams v. Illinois, 399 U.S. 235 (1970), and its progeny, the combined effect of these statutes constitutes a violation of the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution. This is so, appellant argues, because an indigent defendant may be imprisoned for nonpayment of a fine simply because of an inability to pay.

The Supreme Court first addressed this issue in *Williams v. Illinois, supra.* There, the defendant received the maximum sentence provided for petty theft in Illinois: one year imprisonment and a $500 fine. The defendant was also taxed $5 in court costs. As permitted by statute, the judgment directed that if the fine was not satisified at the end of the one year sentence, the defendant would remain in jail to "work off" the fine and costs at the rate of five dollars each day. *Williams,* 399 U.S. at 236. In *Williams,* the effect of the Illinois "work off" statute required the defendant to be confined for 101 days beyond the maximum period of confinement fixed by statute solely because he could not pay the fine and costs. *Id.* at 236-237. The court reasoned that "once the State has defined the outer limits of incarceration necessity [sic] to satisfy its penological interest and policies, it may not then subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely by reason of their indigency." *Id.* at 241-242. Thus, the judgment was vacated because the "work off" statute created an impermissible discrimination founded solely on the ability to pay. *Id.* at 241.

---

[4]NRS 484.3795 provides in relevant part:

[Any person who violates NRS 484.3795] shall be punished by imprisonment in the state prison for not less than one year nor more than six years and must be further punished by a fine of not less than $2,000 nor more than $5,000. . . .

[5]NRS 176.065 provides that:

Whenever a person is sentenced to both fine and imprisonment, or to pay a forfeiture in addition to imprisonment, he shall be confined in the state prison or in the county jail, whichever is designated in his sentence of imprisonment, for an additional period of 1 day for each $4 of the amount until such fine or forfeiture is satisfied or the maximum term of imprisonment prescribed by law for the offense committed has elapsed, whichever is earlier, but his eligibility for parole is governed only by his sentence of imprisonment.

The *Williams* doctrine was fleshed out in the companion case of Morris v. Schoonfield, 399 U.S. 508 (1969). There the Court vacated and remanded a Maryland judgment for reconsideration in light of intervening state legislation and its decision in *Williams. Id.* Nevertheless, a four justice concurrence, penned by Justice White, shed some light on *Williams* by stating that:

> [T]he same constitutional defect condemned in *Williams* also inheres in jailing an indigent for failing to make immediate payment of any fine, *whether or not the fine is accompanied by a jail term and whether or not the maximum term that may be imposed on a person willing and able to pay a fine.* In each case, the Constitution prohibits the State from imposing a fine as sentence and then *automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.*

*Id.* at 509. (Emphasis added.)

Justice White's concurrence was adopted by a majority of the court in Tate v. Short, 401 U.S. 395, 398 (1971). There, the defendant was fined a total of $425 for offenses which were punishable by fines only. *Id.* at 396-397. The defendant was unable to pay the fines because of his indigency and was committed to a municipal prison farm pursuant to a state statute and municipal ordinance which required him to "work off" the fines at the rate of $4 per day. *Id.* After adopting the White concurrence, the *Tate* court stated that because the State had legislated a "fines only" policy for traffic offenses, imprisonment of an indigent defendant without the means to pay his fine did not further any penal objective of the State. *Id.* at 399. As it noted in *Williams* and *Tate,* other alternatives exist to which a state may resort to constitutionally collect its fines. *See Tate,* 401 U.S. at 400 n. 5; *Williams,* 399 U.S. at 244-245 nn. 21, 22. Because imprisonment of the defendant in *Tate* constituted the same unconstitutional discrimination as in *Williams,* the judgment was reversed and remanded for reconsideration. *Id.* at 401.

The *Williams-Morris-Tate* authority was most recently applied by the Court in a review of an order revoking an indigent's probation for failure to pay a fine imposed as a condition of that probation. Bearden v. Georgia, 103 S.Ct. 2064 (1983). In reversing the judgment of the Georgia Court of Appeals, which upheld the revocation, the Supreme Court concluded that the petitioner's probation could not be automatically revoked without a determination by the trial court that petitioner "had not made sufficient bona fide efforts to pay or

that adequate alternative forms of punishment did not exist." *Id.* at 2067.

Pursuant to NRS 176.065, appellant faces an additional 500 days in prison if he has not satisfied the $2,000 fine at the end of his four year sentence. If appellant did not pay his fine and served 500 days in addition to his four year prison term, the aggregate imprisonment would not exceed the 6 year maximum imprisonment set by NRS 484.3795. Respondent's sole argument is that because NRS 176.065 does not operate, in this case, to extend appellant's imprisonment beyond the maximum provided by NRS 484.3795, the sentence is not contrary to the holding in *Williams*.[6]

In *Williams,* Chief Justice Burger attempted to limit the opinion to "hold only that a state may not constitutionally imprison beyond the maximum duration fixed by statute a defendant who is financially unable to pay a fine." *Williams,* 399 U.S. at 243. This limitation was seemingly turned aside by the *Tate* Court's adoption of Justice White's expansive concurrence in *Morris.* In any event, the *Tate* decision was bolstered by the state's selection of a "fines only" policy which demonstrated to the Court that imprisonment of indigent convicts for nonpayment of fines would not serve any penological interest. In view of the Supreme Court's recent description of the *Williams-Tate* rule as prohibiting the state from "impos[ing] a fine as sentence and then automatically conver[ting] it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full," *Bearden,* at 2070, there is no longer doubt that the limitation imposed in *Williams* has been abandoned. *See also,* Frazier v. Jordan, 457 F.2d 726, 728 (5th Cir. 1972); Hood v. Smedley, 498 P.2d 120 (Alaska 1972); State v. Snyder, 203 N.W.2d 280 (Iowa 1972); Spurlock v. Noe, 467 S.W.2d 320 (Ky. 1970); State v. DeBonis, 276 A.2d 137 (N.J. 1971); Commonwealth *ex rel.,* Parrish v. Cliff, 304 A.2d 158 (Pa. 1973).

This Court has also applied in different contexts the *Williams-Tate* rule which constitutionally prohibits the state from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full. *Tate,* 401 U.S. at 398. *See, e.g.,* Burke v. State, 96 Nev. 449, 611 P.2d 205 (1980) (Probation cannot be revoked for defendant's failure to make restitution absent finding that he was not indigent); Anglin v. State, 90 Nev. 287, 525 P.2d 34 (1975) (Indigent defendant

---

[6]The legislature, of course, provided in NRS 176.065 that imprisonment for nonpayment shall not exceed the maximum term of imprisonment prescribed by law for the offense committed.

financially unable to post bail must be given credit on prison term for detention).

NRS 176.085 permits a judge to reduce a fine or order installment payments if after imposition of the fine but *before its discharge by confinement* it is made to appear that the fine is beyond the defendant's financial resources of present ability to pay.[7] According to the *Williams-Tate* rule, this statute is constitutionally insufficient. Conceivably, under NRS 176.085, an indigent defendant could be imprisoned for nonpayment of a fine *before* a hearing was held to determine the defendant's ability to pay the fine.

The mandate of the *Williams-Tate* rule is clear. Before a defendant may be imprisoned for nonpayment of a fine, a hearing must be held to determine the present financial ability of the convict. If the convict is indigent, the sentencing court must permit discharge of the fine through one or more of the alternatives contemplated in NRS 176.085. Of course, nothing in this opinion prohibits the state from imprisoning a defendant who has the financial means with which to pay but wilfully fails or refuses to satisfy the fine or from imprisoning an indigent who wilfully fails or refuses to make a good faith effort to comply with an alternative payment plan established by the court. *See Bearden,* 103 S.Ct. at 2072-2073; *In re* Antazo, 473 P.2d 999 (Cal. 1970).

No constitutional impediment exists to *imposing* a mandatory fine on an indigent defendant. The state, however, is barred from automatically converting the fine to a sentence of imprisonment for nonpayment of the fine. Since appellant has not yet been imprisoned for nonpayment of his fine, the sentence and fine imposed upon him under NRS 484.3795 are affirmed.

---

[7]NRS 176.085 provides that:

Whenever, after fine has been imposed but before it has been discharged by payment or confinement, it is made to appear to the judge or justice imposing such fine or his successor:

1.  That the fine is excessive in relation to the financial resources of the defendant, such judge or justice or his successor may reduce the fine accordingly.

2.  That the discharge of the fine is not within the defendant's present financial ability to pay, such judge or justice or his successor may direct that the fine be paid in installments.